1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                            FOR THE DISTRICT OF ARIZONA

8

9    Gary Ray Crowell,                    )    No. CV-97-0913-PHX-NVW (LOA)
                                          )
10              Petitioner,               )    **REPORT AND RECOMMENDATION**
                                          )
11   vs.                                  )
                                          )
12   Joel Knowles, et al.,                )
                                          )
13              Respondents.              )
                                          )
14   _____ )

15          This matter arises on the Amended Petition of Gary Ray Crowell for Writ of Habeas

16   Corpus pursuant to 28 U.S.C. § 2254.  (docket # 9)

17                      **BACKGROUND AND PROCEDURAL HISTORY**

18   **I. Factual Background**

19          On December 16, 1986, Ronald Achino took his fourteen-year-old niece, Debra

20   Glasford, to the Mission   Medical Center in Mesa, Arizona to have her sprained ankle

21   examined. (Respondents' Exh. K at 1; Exh. N at 1)[1]  Before Debra's examination was over, Mr.

22   Achino left to pick up his wife from work.  (Respondents' Exh. K at 1)   When Debra was

23   released from the Medical Center between 12:00 p.m. and 1:00 p.m., her aunt and uncle, Mr.

24   and Mrs. Achino, had not yet returned to pick her up.   (Respondents' Exh. P at 1) Because the

25   doctor had advised Debra that walking would help the healing process, Debra began walking

26   the two miles home.  As she walked home, Debra noticed a man in a light blue Monte Carlo

27   _____

28          [1]  Docket # 15 includes Respondents' Exhibits A to BB, docket # 27 includes Respondents'
     Exhibits CC to HH, and docket # 60 includes Respondents' Exhibits II to PP.

1    slowly drive by her twice.  (Respondents' Exh. N at 1-2) Shortly thereafter, the driver,

2    Petitioner, parked his car and approached Debra on foot and asked if she had seen a hubcap roll

3    by her. (Id.) Debra said no and continued walking (Id.) Petitioner then followed Debra on foot,

4    passed her and proceeded to walk in front of her. (Id.)  When Debra attempted to pass

5    Petitioner, he grabbed her, pressed a knife to her side, and told her to put her arm around him.

6    (Respondents' Exh.  N at 2) Debra complied with Petitioner's demands and he walked her to

7    his car.  (Id.)

8        Once inside Petitioner's car, Debra saw her aunt and uncle drive by.  (Id. ) Petitioner

9    told Debra to "wave and smile" at them.  (Respondents' Exh. N at 2) Debra replied, "they know

10   I don't know you, I am only fourteen."  (Respondents' Exh. P at 2) Petitioner then slapped

11   Debra across the face and told her not to lie. (Id.)   The Achinos unsuccessfully attempted to

12   follow Petitioner. (Respondents' Exh. P at 2)

13       Petitioner drove through Arizona to New Mexico. (Respondents' Exh. N at 3) Debra

14   tried several times to escape through the passenger side door while Petitioner was driving.

15   (Respondents' Exh. P at 2; Exh N at 2)  During this trip, Petitioner made several demands that

16   Debra perform fellatio on him and ordered her to undress so that he could fondle her while he

17   drove. (Respondents' Exh. P at 3; Exh. N at 2; Exh. Q at 31-32) Debra complied with

18   Petitioner's requests. (Id.)  At a stop in Miami, Arizona, Petitioner tied Debra to the car seat to

19   prevent her escape.  (Respondents' Exh. N at 3)

20       Near Globe, Arizona, Petitioner drove to a McDonald's restaurant and pulled up to

21   the drive-thru window.  (Respondents' Exh. P at 4) Petitioner ordered Debra not to look at any

22   of the employees or customers.  (Id. at 4-5) Petitioner ordered food and drink and gave Debra

23   a soda.  After leaving the McDonald's, Debra drank one half of the soda and then Petitioner

24   poured what Debra thought was vodka into the cup.  (Respondents' Exh. P at 5) Petitioner

25   demanded that Debra drink the vodka and continually added more vodka to the cup.  (Id.)

26   Petitioner continued driving to an area outside of Globe, Arizona and then pulled the car off the

27   road and ordered Debra out of the car.  Petitioner led Debra to nearby bushes and raped her. (Id.

28   at 5-6; Respondents' Exh. N at 3-4)

1    Petitioner then walked Debra back to the car and continued driving.  He ordered

2    Debra  to keep drinking vodka so that she would become drunk and he could "leave her at her

3    front door." (Respondents' Exh. N at 4; P at 6-7)  Debra eventually passed out. (Id.; Exh. P at

4    6)  When Debra awoke, she was in a tent in a campground which she later learned was in New

5    Mexico. (Respondents' Exh. N at 4; Exh. P at 6)  Her left arm was tied to the arm of Petitioner

6    who was sleeping next to her. (Respondents' Exh. P at 6) When Petitioner awoke during the

7    night, he forced Debra to engage in intercourse. (Respondents' Exh. N at 4).  The following

8    morning, Petitioner again forced Debra to engage in intercourse.  (Id.)  Later, Debra and

9    Petitioner left the tent and Petitioner began cooking rice.  (Respondents' Exh. N at 5) Petitioner

10   had numerous camping supplies and informed Debra that he planned to keep her in the

11   mountains for four years until she was old enough (18 years old) and then he would "take her

12   to a big city and make her a prostitute" to earn money to support him. (Id. at 5) After Petitioner

13   finished cooking the rice, Debra requested gloves for her cold hands.  (Respondents' Exh. P at

14   7) When Petitioner went to the car to find gloves, Debra grabbed her clothes and a knife and

15   gun belonging to Petitioner and fled.  Although Petitioner chased Debra, she eventually evaded

16   Petitioner and ran to a house where she received assistance.  (Respondents' Exh. N at 5)

17   At approximately 10:30 a.m. on December 17, 1986, New Mexico State Police

18   Officer Richard Masingale received a description of Petitioner's vehicle and subsequently

19   spotted it at a gas station near Datil, New Mexico.  (Respondents' Exh. M at 1).  As Officer

20   Masingale approached, Petitioner spotted the officer and drove away. (Id.)  Officer Masingale

21   chased Petitioner for approximately one mile until Petitioner pulled off the road and his vehicle

22   became stuck. (Id. at 2) Petitioner escaped on foot. (Id.)

23   At approximately 5:20 p.m. that same day, a motorist picked up Petitioner who was

24   hitchhiking outside of Datil, New Mexico.  (Respondents' Exh. L at 1)  Petitioner asked to be

25   dropped off at the San Miguel Motel in Socorro, New Mexico. (Id.)  Because Petitioner acted

26   very suspicious, the motorist notified the police after dropping Petitioner off at the motel.  (Id.

27   at 1-2).   Police later apprehended Petitioner.

28

1    Following his arrest, and after receiving <u>Miranda</u> warnings, Petitioner told FBI

2    agents that Debra was hitchhiking and voluntarily got into his car to go camping with him and

3    that she indicated she was 18 years old.  (Respondents' Exh. O at 2) Petitioner admitted to

4    having sexual relations with Debra but claimed that they were consensual. (<u>Id.</u>)

5    **II. Procedural Background**

6    On March 12, 1987, the State of Arizona charged Petitioner with one count of

7    kidnaping, a class 2 felony and a dangerous crime against children, and four counts of sexual

8    conduct with a minor, class 2 felonies and dangerous crimes against children.  (Respondents'

9    Exh. A) The State subsequently filed an allegation of two prior felony convictions and alleged

10   that Petitioner had committed the offenses while on probation. (Respondents' Exh. B at 11)

11   Before trial, Petitioner moved for an examination of mental condition pursuant to

12   Rule 11, Arizona Rules of Criminal Procedure. (Respondents' Exh. C) The trial court[2] ordered

13   the Correctional Health Services Medical Staff to prepare a pre-screening report and to submit

14   it to the court. (Respondents' Exh. D)  After the court received and reviewed Dr. Raymond

15   Jabara's pre-screening report, the court found that no grounds existed to conduct a full Rule 11

16   examination. (Respondents' Exh. E at 3)

17   On March 18, 1988, Petitioner agreed to waive his right to a jury trial.

18   (Respondents' Exh. F) The State, Petitioner, and defense counsel entered into an agreement

19   wherein the State agreed to dismiss three of the four counts of sexual conduct with a minor in

20   exchange for Petitioner's waiver of his right to a jury trial. (Respondents' Exh. F, G at 2-3)  At

21   the hearing on Petitioner's waiver of trial by jury, the court informed Petitioner that he had an

22   absolute right to a jury trial.  The court also informed Petitioner of the charges against him and

23   that if he was convicted of those offenses, he would be sentenced to consecutive 35-year terms

24   of imprisonment on each count — requiring Petitioner to serve 70 years in prison.  (<u>Id.</u> at 3-8)

25   The trial court also questioned Petitioner to ensure that Petitioner knowingly, voluntarily, and

26   intelligently waived his right to jury trial. (<u>Id.</u> at 8-11) Petitioner testified that counsel had

27   

28   [2] The Honorable Michael D. Ryan presided.

1  explained his right to a trial by jury and that he consented to waive that right.  (Respondents'
2  Exh. G at 8-10)

3          Before the bench trial commenced, defense counsel filed several pretrial motions,
4  including a motion to suppress statements which Petitioner made following his arrest.
5  (Respondents' Exh. H) The court withheld ruling until the close of evidence.

6          On April 12, 1988, the date set for trial, the parties advised the court that the State
7  would submit its case based on several law enforcement reports.  (Exh. I at 23-26) Petitioner,
8  his counsel and the prosecutor prepared a "Submission of the Case to the Court upon the
9  Record" form and presented it to the trial court.  (Respondents' Exh. J) The agreement provided
10  that the trial court would determine Petitioner's guilt or innocence based on the record submitted
11  to the court.  (Respondents' Exh. J) The agreement provided that, if convicted on counts one and
12  five, Petitioner would be required to serve consecutive sentences of 35 years imprisonment
13  without the possibility of release on any basis.  (Respondents' Exh. J)  Before accepting the
14  submission, the trial court addressed Petitioner to ensure that he knowingly, voluntarily and
15  intelligently decided to submit the case on the police reports and to waive his constitutional
16  rights, including his right to a jury trial and to cross-examine witnesses whose statements were
17  in those reports.  (Respondents' Exh. I at 26-34).  The trial court also informed Petitioner that
18  if convicted on each count, he would be required to served consecutive prison terms totaling 70
19  years, to be served consecutive to the term he was already serving in federal prison.
20  (Respondents' Exh. I at 28-29, 31-32)  Petitioner acknowledged that he understood the
21  ramifications of his decision. (Id. at 29-32).  Accordingly, the trial court accepted the case on
22  the record which included several law enforcement reports and interview transcripts.[3]

23

24          [3]The record submitted to the trial court included the following documents which accompany the
25  State's Answer to Petitioner's Petition for Writ of Habeas Corpus, docket # 15, and docket # 27, # 29
    and # 37:
26          Exhibit L: Report of FBI Special Agent Armond A. Lara
            Exhibit M: Report of FBI Special Agent Michael C. Koval
27          Exhibit N: Report of FBI Special Agent Ben C. McIntosh
            Exhibit Q: Transcript of Interview of Debra Glasford by Dennis Farrell, Public Defender
28          Exhibit R: Interview of Gary Ray Crowell by FBI Special Agents Roger E. Babcock and

1    The Court also heard Petitioner's testimony.  (Respondents' Exh. I at 37-102)

2    Petitioner testified that Debra had been hitchhiking and that she wanted to accompany him on

3    his camping trip.  He testified that he and Debra drove on East Interstate 10 to Route 60 and

4    eventually drove to the Globe area.  (Respondents' Exh. I at 40)  He further testified that he did

5    not know that Debra was 14 years old, and that she consented to all sexual acts in which they

6    engaged.  (Respondents' Exh. I at 38, 40-42)

7    Petitioner further testified that roughly 10 to 20 minutes after crossing the New

8    Mexico border, they pulled off the road and engaged in sexual intercourse.  (Id. at 41) Petitioner

9    testified that he then drove to a campground in Gallup, New Mexico, where he and Debra spent

10    the night.  (Id. at 42) Petitioner testified that he and Debra engaged in consensual sexual

11    intercourse several more times before he learned that Petitioner was 14 years old.

12    (Respondents' Exh. I at 42) Petitioner stated that when he discovered Petitioner's age, he

13    became "extremely nervous about the situation," and was not sure what to do.  (Id. at 42)

14    Petitioner stated that later that morning, Debra requested gloves and when he went to the car

15

16        Armond A.    Lara

17        Exhibit CC:  Incident report filed by victim's father containing statements of victim's aunt and uncle;

18        Exhibit DD: December 22, 1986 report of medical examination of victim by Barbara

19        Stephenson, Registered Nurse, Emergency Room Socorro General Hospital, Socorro, New Mexico;

20        Exh. EE: February 5, 1987 Evidence inventory by New Mexico State Police, Criminal Investigations Division;

21        Exh. FF: December 18, 1986 statement of Ronald E. Achino to the Federal Bureau of Investigation Officer Bradley;

22        Exh. GG: December 23, 1986 report prepared by Federal Bureau of Investigation Officer

23        Babcock of interview with Petitioner;
       Exh. HH: December 22, 1986 report prepared by Federal Bureau of Investigation Officers

24        Broton and Zembiec regarding interview with Petitioner;
       Exh. P: March 6, 1987 supplemental report of Maricopa County Sheriff's Office including

25        handwritten statement by Debra Glasford; and

26        Docket # 29 (State's exhibit 12): An audio cassette tape recording of an interview with
       Dr. Martinez.

27

28

1   to retrieve them, she left.  (Id.)  According to Petitioner, he drove into Gallup, New Mexico to

2   purchase gas where he spotted a New Mexico state police officer.  (Id. at 43) Petitioner testified

3   that he "panicked for two reasons: One, because the girl had told me that she was 14 years old;

4   and second, because I am on parole."  (Id.)  Petitioner testified that Debra's statements to police

5   and medical professionals contained many inconsistencies.  (Respondents' Exh. I at 46-86)

6        Petitioner admitted that on May 27, 1987, he was convicted in the United States

7   District Court for the District of New Mexico of kidnaping based on the events involving Debra.

8   (Id. at 89.)  Petitioner also admitted to a previous conviction in the state of Virginia for rape and

9   abduction. (Id. at 89-90.)  Petitioner admitted that he told Investigator Johnston that he had

10  engaged in consensual sexual relations with Debra in Arizona.  (Respondents' Exh. I at 93)

11       At the conclusion of the evidence, the trial court denied Petitioner's motion for a

12  directed verdict of acquittal. (Respondents' Exh. S at 6) The trial court also denied Petitioner's

13  motion to suppress statements he made upon his arrest finding that Petitioner voluntarily made

14  the statements after receiving Miranda warnings and waiving his rights. (Id. at 6-7.)

15       On April 26, 1988, the trial court found Petitioner guilty of both counts; kidnaping

16  and sexual conduct with a minor.[4]  (Respondents' Exh. U at 2) The trial court also found that

17  Petitioner admitted both of his prior convictions while testifying at trial. (Id. at 3.)  However,

18  the trial court took under advisement the issue of whether Petitioner's federal conviction for

19  kidnaping constituted a "predicate felony" for purposes of sentence enhancement.  (Id. at 4.)

20       On May 26, 1988, the trial court determined that Petitioner's federal conviction for

21  kidnaping constituted a predicate felony for purposes of sentence enhancement under Ariz. Rev.

22  Stat. § 13-604.01. (Respondents' Exh. V at 3-4)  As such, Petitioner had two predicate felony

23  convictions for purposes of sentencing enhancement.  (Id. at 4-5.)  Accordingly, the trial court

24  sentenced Petitioner to mandatory consecutive sentences of life imprisonment without

25  possibility of release on any basis until Petitioner had served 35 years on each count of

26

27  _____

28  [4]The Honorable Michael D. Ryan presided over Petitioner's trial, Superior Court, Maricopa
    County, Cause Number CR-87-02213.

conviction. (<u>Id.</u> at 9-10.)  The trial court also ordered that the sentences be served consecutive to Petitioner's current sentence on his federal kidnaping conviction. (<u>Id.</u>)

### A.  Direct Review

On June 6, 1989, Petitioner, proceeding *pro se*, timely appealed raising the following claims:

I. Insufficient evidence existed to sustain a guilty verdict;

II. The trial court erred in denying Petitioner's Rule 11 motion;

III. The trial court erred in admitting Petitioner's statement;

IV. The court's actions amounted to judicial misconduct;

V. Petitioner did not knowingly and intelligently agree to submit the case to the court on the record;

VI. Petitioner received ineffective assistance of counsel;

VII. Consecutive sentences violated Petitioner's right to protection against double jeopardy;

VIII. Petitioner's prior conviction for the same offense does not qualify as a predicate offense for sentence enhancement purposes; and

IX. Petitioner's kidnaping conviction in the state court was based on a constitutionally inferior federal conviction, and therefore is also inferior.

(Respondents' Exh. W at I.)  On November 30, 1989, the Arizona Court of Appeals denied all of Petitioner's claims except his claims of ineffective assistance of counsel raised in Ground VI. (Respondents' Exh. X) With respect to Petitioner's claims of ineffective assistance of counsel, the appellate court noted that the Arizona Supreme had recently stated that a defendant's conviction will not be reversed based on ineffective assistance of counsel absent a separate evidentiary hearing. (Respondents' Exh. X at 12); <u>State v. Carver</u>, 160 Ariz. 167, 175, 771 P.2d 1380, 1390 (Ariz. 1988).  Because no evidentiary hearing had been conducted, the appellate court did not review Petitioner's claims of ineffective assistance of counsel.  On February 14, 1990, the Court of Appeals granted reconsideration to clarify the length of Petitioner's sentences. (Exh. Y)  The court denied reconsideration as to all other claims.(<u>Id.</u>)

Thereafter, Petitioner filed a petition for review by the Arizona Supreme Court presenting the following issues:

1. The State presented insufficient evidence to support the trial court's verdict.

2. The trial court erred in ruling that Petitioner's statements were voluntary.

3. Petitioner was denied a fair trial because of judicial misconduct.

4. Petitioner did not knowingly and intelligently agree to the submission of the case to the court on the record.

5. The trial court's practice of conducting a "prior conviction" hearing after a submission of case to the court on the record violated Petitioner's right to be informed of the exact sentence that could be imposed.

6. The appellate court wrongly denied an evidentiary hearing on the issue of ineffective assistance of counsel.

7. Petitioner was denied effective assistance of appellate counsel.

8. Petitioner was subjected to double jeopardy/double punishment.

9. The trial court erred in ruling that Petitioner's federal conviction for the same offense was a prior predicate offense for the purpose of sentence enhancement.

(Respondents' Exh. Z at II.)  The Arizona Supreme Court denied review on February 5, 1991 (Respondents' Exh. AA) and on February 13, 1991, the Arizona Court of Appeals issued its mandate. (Respondents' Exh. BB)

**B. Petition for Writ of Habeas Corpus**

On April 23, 1997, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court.  (docket # 1) On May 12, 1997, Judge Roslyn O. Silver noted that Petitioner had not used the proper form and ordered him to file an amended petition on the proper form.  (docket # 6) On June 13, 1997, Petitioner filed an Amended Petition, on the proper form, raising the following claims:

1) Whether sufficient evidence supported Petitioner's conviction;

(2) Whether counsel rendered ineffective assistance;

(3) Whether Petitioner knowingly and voluntarily agreed to accept stipulated facts at his bench trial;

(4) Whether the prosecution's use of Petitioner's federal conviction to enhance his sentence in state court subjected Petitioner to double jeopardy and double punishment; and

(5) Whether Petitioner's federal kidnaping conviction improperly enhanced his state sentence because the federal conviction was "unconstitutionally obtained."

(docket # 9)

In their Answer, Respondents argued that Grounds 1, 3, 4, and 5 lacked merit or failed to allege federal constitutional claims, and that Ground 2, ineffective assistance of counsel, was procedurally defaulted.  (docket # 14) On April 23, 1999, the undersigned issued a Report and Recommendation ("R&R") recommending that the petition be dismissed on the ground that Ground 2 was procedurally defaulted and Grounds 1, 3, 4, and 5 either lacked merit or failed to state a federal claim.  (docket # 21) On August 21, 2000, Judge Silver adopted the recommendation as to claims 2, 3, and part of 4, but referred the following claims back to the undersigned: (1) whether Petitioner's prior felony conviction was a "predicate felony;" and (2) whether sufficient evidence supported the conviction.  (docket # 21)

On January 30, 2001, the undersigned issued an R&R rejecting those two claims. (docket # 39) On March 5, 2001, Judge Silver adopted the R&R and ordered that the habeas petition be denied and dismissed.  (docket # 41)

## C.  Appeal of March 5, 2001 Ruling on Petition for Writ of Habeas Corpus

On May 1, 2001, Judge Silver issued a certificate of appealability ("COA"), limited to the finding of procedural default on Ground 2, ineffective assistance of counsel.  (docket # 44)  On February 21, 2002, the Ninth Circuit Court of Appeals found that the claims of ineffective assistance raised in Ground 2 were unexhausted because Petitioner could still file a petition for post-conviction relief in state court raising those claims.  Crowell v. Arizona Attorney General, No. 01-15885 (9th Cir., Feb. 21, 2002).  The Ninth Circuit remanded the case to the district court with directions to stay the petition and hold it in abeyance while Petitioner attempted to exhaust his state remedies with respect to his ineffective assistance of counsel claims.  Id. at 3.  On remand, the petition was stayed pending Petitioner's attempts to exhaust his claims of ineffective assistance of counsel.  (docket # 48) The case was then reassigned to the Honorable Neil V. Wake, United States District Judge. (docket # 50)

### D.  Post-conviction Proceedings Following Remand

On June 4, 2002, Petitioner filed a notice of post-conviction relief in Maricopa County Superior Court raising numerous claims of ineffective assistance of counsel:

1.  Counsel entered into plea negotiations before receiving discovery or consulting with Petitioner.

2.  Counsel did not investigate or interview witnesses.

3.  Counsel's deficiencies led to a violation of Petitioner's right to a speedy trial.

4.  Counsel misled Petitioner regarding the procedures involved in a stipulated-facts trial.

5.  Counsel did not object to the State's failure to give advance notice of its intention to seek an enhanced sentence.

6.  Counsel misled Petitioner regarding the potential sentences.

7.  Counsel stipulated to evidence that he had not reviewed.

8.  Counsel did not object to the admission into evidence of Petitioner's prior convictions.

9.  Counsel did not object to the imposition of an enhanced sentence based on the finding of one, not the required two, prior convictions.

10.  Counsel urged a sentence that was not even possible in this case.

(Respondents' Exh. II)

On July 11, 2004, the Maricopa County Superior Court, Judge Jeffery S. Cates[5], held an evidentiary hearing.  (Respondents' Exh. JJ) Petitioner's appointed advisory counsel subsequently filed an amendment to the petition raising a claim that the affirmative defense provisions of A.R.S. § 13-1407 were unconstitutional.  (Respondents' Exh. KK)

On December 21, 2004, Judge Cates issued an order rejecting Petitioner's claims of ineffective assistance of counsel finding that Petitioner failed to make the showing required by Strickland v. Washington, 466 U.S. 668 (1984). (Respondents' Exh. LL at 1-7) Judge Cates also rejected Petitioner's constitutional challenge to A.R.S. § 13-1407.  (Id. at 4)

---

[5]  The original trial judge, Michael D. Ryan, had been appointed to the Arizona Court of Appeals, and later to the Arizona Supreme Court.

1      On March 3, 2005, Petitioner filed a petition for review in the Arizona Court of

2  Appeals raising the same claims he had raised before the trial court.  (Respondents' Exh. MM)

3  On December 29, 2005, the Arizona Court of Appeals denied review.  (Respondents' Exh. NN)

4  The Court of Appeals granted Petitioner an extension until March 23, 2006 to file a petition for

5  review in the Arizona Supreme Court.  (Respondents' Exh. PP) Petitioner did not file a petition

6  for review until after the deadline expired.  On April 5, 2006, the Court of Appeals issued an

7  order refusing to accept Petitioner's untimely petition for review finding that Petitioner had

8  failed to "place the envelope containing his 'Petition for Review' in the hands of prison

9  authorities for mailing until well after the filing deadline of March 23, 2006."  (Id.)

10      Thereafter, on April 26, 2006, Judge Wake ordered Respondents' to file an Amended

11  Answer to Petitioner's Amended Petition for Writ of Habeas Corpus, and referred the matter to

12  the undersigned for consideration and an R&R.  Pursuant to the foregoing, the only claims

13  before the Court are Petitioner's six claims of ineffective assistance of counsel raised in Ground

14  Two of the Amended Petition.  (docket # 9)

### EXHAUSTION AND PROCEDURAL BAR

16      Respondents assert that federal habeas review of Petitioner's claims of ineffective

17  assistance of counsel is procedurally barred because Petitioner did not present his claims to the

18  Arizona Supreme Court either on direct appeal or on post-conviction review.

19  **I. Legal Standard**

20      Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state

21  prisoner's application for a writ of habeas corpus, the prisoner must have exhausted, in state

22  court, every claim raised in his petition.  Coleman v. Thompson, 501 U.S. 722, 731 (1991).  A

23  petitioner satisfies the exhaustion requirement by fairly presenting his claims to the state court

24  either on direct review or on post-conviction review.  Swoopes v. Sublett, 196 F.3d 1008, 1010

25  (9th Cir. 1999).  A petitioner need only exhaust one of these avenues before bringing a federal

26  habeas corpus petition.  Brown v. Easter, 68 F.3d 1209, 1211 (9th Cir. 1995).  In Arizona,

27  inmates sentenced to less than life imprisonment need only present their claims to the Arizona

28

1    Court of Appeals to satisfy the exhaustion requirement.  Swoopes, 196 F.3d at 1010.  However,

2    if a prisoner is sentenced to life imprisonment or death, he must present his claims to the

3    Arizona Supreme Court.  Id. at 1010.

4            To properly exhaust state remedies, the prisoner must have afforded the state courts

5    the opportunity to rule upon the merits of his federal constitutional claims by "fairly presenting"

6    them to the state courts in a procedurally appropriate manner.  Castille v. Peoples, 489 U.S. 346,

7    349 (1989).  It is not enough that all of the facts necessary to support the federal claim were

8    before the state court or that a "somewhat similar" state law claim was raised.  Baldwin v.

9    Reese, 541 U.S. 27, 28 (2004)(stating that a reference to ineffective assistance of counsel does

10   not alert the court to federal nature of the claim).  Rather, the habeas petitioner must cite in state

11   court to the specific constitutional guarantee upon which he bases his claim in federal court.

12   Tamalini v. Stewart, 249 F.3d 895, 898 (9th Cir. 2001).  Similarly, general appeals to broad

13   constitutional principles, such as due process, equal protection, and the right to a fair trial, are

14   insufficient to establish fair presentation of a federal constitutional claim.  Lyons v. Crawford,

15   232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001);

16   Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made

17   "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or

18   to a "constitutional error" or a "fair trial").  Similarly, a mere reference to the "Constitution of

19   the United States" does not preserve a claim.  Gray v. Netherland, 518 U.S. 152, 162-63 (1996).

20   Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the

21   same considerations" under state or federal law, the petitioner must make the federal nature of

22   the claim "explicit either by citing federal law or the decision of the federal courts . . . ."  Lyons,

23   232 F.3d at 668.  A state prisoner does not fairly present a claim to the state court if the court

24   must read beyond the petition or brief filed in that court to discover the federal claim.  Baldwin,

25   541 U.S. at 29.

26            Where a prisoner fails to "fairly present" a claim to the State courts in a procedurally

27   appropriate manner, state court remedies may, nonetheless, be "exhausted."  This type of

28

1  exhaustion is often referred to as "procedural default" or "procedural bar." <u>Ylst v. Nunnemaker</u>,

2  501 U.S. 797, 802-05 (1991); <u>Coleman</u>, 501 U.S. at 731-32. There are two categories of

3  procedural default.

4       First, a state court may have applied a procedural bar when the prisoner attempted

5  to raise the claim in state court. <u>Nummemaker</u>, 501 U.S. at 802-05.  If the state court also

6  addressed the merits of the underlying federal claim, the "alternative" ruling does not vitiate the

7  independent state procedural bar. <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989); <u>Carringer v.</u>

8  <u>Lewis</u>, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance of

9  counsel claims "barred under state law," but also discussed and rejected the claims on the

10  merits, en banc court held that the "on-the-merits" discussion was an "alternative ruling" and

11  the claims were procedurally defaulted and barred from federal review).  A higher court's

12  subsequent summary denial of review affirms the lower court's application of a procedural bar.

13  <u>Nunnemaker</u>, 501 U.S. at 803.

14       Second, the state prisoner may not have presented the claim to the state courts, but

15  pursuant to the state courts' procedural rules, a return to state court would be "futile." <u>Teague</u>

16  <u>v. Lane</u>, 489 U.S. 288, 297-99 (1989).  Generally, any claim not previously presented to the

17  Arizona courts is procedurally barred from federal review because any attempt to return to state

18  court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1,

19  32.2(a) & (b); <u>Beaty v. Stewart</u>, 303 F.3d 975, 987 (9th Cir. 2002); <u>State v. Mata</u>, 185 Ariz. 319,

20  322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for

21  claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R.

22  Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's

23  decision).  A state post-conviction action is futile where it is time-barred.  <u>Beaty</u>, 303 F.3d at

24  987; <u>Moreno v. Gonzalez</u>, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under

25  Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction

26  relief, distinct from preclusion under Rule 32.2(a)).

27

28

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." Dretke v. Haley, 541 U.S. 386, 393-94, (2004); Murray v. Carrier, 477 U.S. 478, 488 (1986).  To establish cause, a petitioner must establish that some objective factor external to the defense impeded her efforts to comply with the state's procedural rules. Id.  The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. Id.  To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982).

To show "prejudice," the prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).  Cause and prejudice are conjunctive requirements; where a petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violation. Smith v. Murray, 477 U.S. 527, 533 (1986).

The "fundamental miscarriage of justice" exception applies only when a constitutional violation probably has resulted in the conviction of one actually innocent of a crime. Casey v. Moore, 386 F.3d 896, 921 n. 27 (9th Cir. 2004).  To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. Schlup v. Delo, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B); Calderon v. Thompson, 523 U.S. 538, 559 (1998) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence. . . . Given the rarity of [reliable] evidence [of actual innocence], in virtually every case, the allegation of actual innocence has been summarily rejected.") (internal quotation marks and citations omitted).

## II.  Application of Law to this Case

In this case, Petitioner was sentenced to consecutive sentences of life imprisonment without eligibility of parole until after he has served 35 years on each count of conviction. Because Petitioner received a life sentence, he must present his claims to the Arizona Supreme Court before seeking federal habeas relief.  Swoopes, 196 F.3d at 1010; Lucero v. Savage, No. 05-2207-PHX-EHC (VAM), 2006 WL 335858, * 4 (D. Ariz., Feb. 10, 2006); Melendez v. Fizer, No. CV-05-891-PHX-SMM (VAM), 2006 WL 1328795, * (D.Ariz., May 12, 2006)(noting that Arizona prisoner sentenced to life imprisonment must present his claims to the Arizona Supreme Court to satisfy the exhaustion requirement).  Swoopes does not distinguish between types of life sentences (e.g., life in prison with or without parole).  Rather, it merely states that those sentenced to death or life in prison must seek review before the Arizona Supreme Court to fully exhaust available state remedies. Melendez, 2006 WL 1328795, * 7 n. 2 (citing Swoopes, 196 F.3d at 1009.)  Because Petitioner was sentenced to life in prison, the plain language of Swoopes requires Petitioner to exhaust his claims by seeking review in the Arizona Supreme Court.[6] Id.

Here, Petitioner presented his claims of ineffective assistance to the Arizona trial court and to the Arizona Court of Appeals on post-conviction review.  After rejecting Petitioner's claims on appeal, the appellate court granted Petitioner an extension until March 23, 2006 to file a petition for review to the Arizona Supreme Court.  (Respondents' Exh. PP)

_____

[6] Respondents also argue that to the extent that Swoopes held that prisoners serving less than a life sentence exhaust their claims by presenting them to the Arizona Court of Appeals, that decision was overruled by Baldwin v. Reese, 541 U.S. 27 (2004).  Nothing in Baldwin either implicitly or explicitly overrules Swoopes.  In fact, since Baldwin was decided, the Ninth Circuit has reinforced Swoopes. Castillo v. McFadden, 399 F.3d 993, 993 n. 3 (9th Cir. 2005)(reiterating that claims of Arizona state prisoners serving less than a life sentence are exhausted once presented to the Arizona Court of Appeals.)  Moreover, even if this Court thought Swoopes were wrongly decided, it lacks the authority to overrule Ninth Circuit law.

Respondents also ask that Court to certify to the Arizona Supreme Court the issue of whether the opportunity to seek discretionary review is available, pursuant to Ariz.R.Crim.P. 31.19.  There is no need to certify this question to the Arizona Supreme Court because it is a state sentencing issue presented to the federal court by way of a habeas corpus petition, thus Ninth Circuit law governs.

1    Petitioner's petition for review was dated March 27, 2006, postmarked March 31, 2006, and

2    received by the Arizona Supreme Court on April 5, 2006.  (Respondents' Exhs. PP, OO)

3    Because Petitioner should have filed the petition for review with the Arizona Court of Appeals

4    (Respondents' Exh. PP), the Clerk of the Arizona Supreme Court transferred it to the appellate

5    court.  (Id.)  The Arizona Court of Appeals found that "petitioner did not place the envelope

6    containing his 'Petition for Review' in the hands of prison authorities for mailing until well after

7    the deadline of March 23, 2006."  (Id.)  Accordingly, the Court of Appeals refused to accept the

8    untimely petition for review and returned the copies of that pleading to Petitioner.  (Id. at 2) The

9    Arizona Court of Appeals rejected the petition for review because Petitioner failed to comply

10   with Arizona's procedural rules regarding the time limits for seeking review from the Arizona

11   Supreme Court.

12          Petitioner's claims are unexhausted and procedurally defaulted because Petitioner

13   cannot now return to state court to present those claims.  Generally, any claim not previously

14   presented to the Arizona courts is procedurally barred from federal review because any attempt

15   to return to state court to properly exhaust a current habeas claim would be "futile."  Ariz. R.

16   Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); State v. Mata,

17   185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is

18   precluded for claims waived at trial, on appeal, or in any previous collateral proceeding);

19   32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days

20   of trial court's decision).  A state post-conviction action is futile where it is time-barred.  Beaty,

21   303 F.3d at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing

22   untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for

23   post-conviction relief, distinct from preclusion under Rule 32.2(a)).

24          Because Petitioner failed to comply with Arizona's procedural rules regarding the

25   time limits for seeking review from the Arizona Supreme Court, he has procedurally defaulted

26   on his claims of ineffective assistance of counsel.  Coleman, 501 U.S. at 731-32.  Accordingly,

27

28

1   federal review is barred absent a showing of cause and prejudice or a fundamental miscarriage

2   of justice.  Dretke v. Haley, 541 U.S. 386, 393 (2004).

3   **III.  Cause and Prejudice or Fundamental Miscarriage of Justice**

4           In an effort to overcome the procedural bar, Petitioner claims that Arizona's post-

5   conviction rules and procedures violate the *ex post facto* clause.  (docket # 65)  Petitioner

6   further argues that post-conviction counsel advised him in a December 29, 2004 letter that if

7   Petitioner was considering federal habeas review, he would "have to give the state courts one

8   appeal chance."  (docket # 65 at 10) Petitioner interpreted counsel's statement to mean that he

9   only had to seek review in the Court of Appeals before proceeding to federal court.   The Court

10  will consider these arguments below.

11              **A.  Arizona's Post-Conviction Rules**

12          Petitioner was convicted on April 26, 1988 and filed a notice of appeal on June 6,

13  1989.  (Respondents' Exh. W) Petitioner claims that on the date he filed his notice of direct

14  appeal, Arizona law allowed a criminal defendant to raise claims of ineffective assistance of

15  counsel on direct appeal.  (docket # 65 at 1)  However, appellate counsel refused to raise

16  Petitioner's claims of ineffective assistance of counsel due to a conflict of interest.  (Id. at 2)

17  Petitioner, therefore, sought leave to file a *pro se* petition raising claims of ineffective

18  assistance.  The Court of Appeals granted Petitioner's motion.  Petitioner claims that before he

19  filed his appellate brief, the Arizona Supreme Court issued its decision in Arizona v. Carver,

20  160 Ariz. 167, 175, 771 P.2d 1380, 1388 (1989) which Petitioner claims articulated a new

21  procedure for raising claims of ineffective assistance of counsel.  Petitioner further claims that

22  based on this change in the law, the Arizona Court of Appeals refused to consider Petitioner's

23  claims of ineffective assistance of counsel on direct review.    Petitioner claims that the

24  application of this rule to his case violated the *ex post facto* Clause.

25          Contrary to Petitioner's assertion, the Arizona Supreme Court decided Carver on

26  April 11, 1989, several months before Petitioner filed his direct appeal.  In Carver, the Arizona

27  Supreme Court mentioned its recent decision in State v. Valdez, 160 Ariz. 9, 15, 770 P.2d 313,

28

1    319 (1989) where the Arizona Supreme Court "recommended that defendants raise the question

2    of ineffective assistance under Rule 32, Ariz.R.Crim.P., 17 A.R.S. and consolidate the post-

3    conviction proceedings with the direct appeal." Carver, 160 Ariz. at 175, 771 P.2d at 1398

4    (citing Valdez, 160 Ariz. at 15, 770 P.2d at 319).   The court in Carver further stated that it "will

5    not reverse a conviction on ineffective assistance of counsel grounds on direct appeal absent a

6    separate evidentiary hearing concerning counsel's actions or inactions." Id.   The Arizona

7    Supreme Court, however, will consider claims of ineffective assistance on direct appeal in

8    limited cases where the court "may clearly determine from the record that the ineffective

9    assistance claim is meritless. . . ." Id.   Valdez and Carver were decided before Petitioner's

10   direct appeal was even filed on June 6, 1989, thus, any new procedural rules announced in those

11   cases were not applied retroactively.  Moreover, even if those cases were applied retroactively

12   to Petitioner's case, the application to Petitioner's case of any change that those cases made to

13   the procedures for pursuing claims of ineffective assistance of counsel did not violate the *ex*

14   *post facto* clause because the retroactive application of a  procedural change that does not affect

15   a substantial right is not *ex post facto*.  Dobbert v. Florida, 432 U.S.  1147 282, 293 (1977).

16   Any change brought about by Valdez or Carver was procedural because the context in which

17   the Arizona courts will consider claims of ineffective assistance of counsel does "not increase

18   the punishment nor change the ingredients of the offense or the ultimate facts necessary to

19   establish guilt," the change is procedural and therefore does not affect a substantial right.

20   Weaver v. Graham, 450 U.S. 24, 31 n. 12 (1981) (quoting Hopt v. Utah, 110 U.S. 574, 590

21   (1884) (internal quotation marks omitted)).  The application of the procedure recommended in

22   Valdez did not preclude Petitioner from presenting his claims of ineffective assistance of

23   counsel to the Arizona courts.  Rather, it merely required Petitioner to present such claims in

24   a petition for post-conviction relief which he ultimately did.

25           Petitioner further argues that because the Arizona Court of Appeals granted

26   Petitioner leave to file a *pro se* brief raising claims of ineffective assistance of counsel, the

27   Arizona Court of Appeals was bound to consider those claims.  (docket # 65 at 6) This argument

28

1    lacks merit. Granting a prisoner leave to file a *pro se* petition does not guarantee that the court

2    will consider the merits of the claims raised therein.   The appellate court merely afforded

3    Petitioner the opportunity to present additional claims to the court.   The court did not indicate

4    that the claims which Petitioner sought to raise were either properly before the court on direct

5    appeal or had merit.   Moreover, even if the Arizona Court of Appeals erred in failing to consider

6    Petitioner's claims of ineffective assistance on direct review, there is no prejudice because the

7    appellate court has since considered those claims on post-conviction review.

8         Petitioner's challenges to the proceedings on direct review and the procedures for

9    pursuing claims of ineffective assistance of counsel under Arizona law do not establish a basis

10   for overcoming the procedural bar to federal habeas review of his claims of ineffective

11   assistance of counsel.

12                    **B.  Reliance on Counsel's Advice**

13        Petitioner next argues that his failure to timely present his claims of ineffective

14   assistance of counsel to the Arizona Supreme Court on post-conviction review should be

15   excused because the late filing was due to his reliance on counsel's erroneous advice.  (docket

16   # 65 at 7) This claim is based on a December 29, 2004 letter from post-conviction counsel.

17   (docket # 63, attached letter from Michael Dew) In that letter, post-conviction counsel wrote

18   that "[i]f you are thinking about going federal habeas corpus on this, then you will have to *give*

19   *the state courts one appeal chance.*"   (Id.)(emphasis added).   Petitioner interpreted this

20   statement to mean that he only had to present his claims to the appellate court before seeking

21   federal habeas review.  The Court finds that counsel's letter to Petitioner was poorly drafted and

22   unclear regarding the steps that Petitioner needed to take to exhaust his state remedies before

23   seeking federal habeas corpus review.   However, Petitioner cannot rely on counsel's poor

24   drafting to excuse the procedural bar because Petitioner had no right to counsel on

25   post-conviction review.   Because Petitioner was not entitled to counsel on post-conviction

26   review, he cannot blame post-conviction counsel for his untimely presentation of his claims to

27   the Arizona Supreme Court. Poland v. Stewart, 169 F.3d 573, 588 (9th Cir. 1998)(stating that

28

1  because there is no constitutional right to counsel in state collateral review proceedings, there

2  is no constitutional right to effective assistance of counsel on collateral review, and alleged

3  ineffectiveness cannot constitute cause for default).

4  　　　　Although Petitioner has not established a basis for overcoming the procedural bar

5  to his claims of ineffective assistance of counsel, in view of the procedural history of this case,

6  the Court will consider the merits of those claims.

7  **ANALYSIS**

8  **I. Standard of Review**

9  　　　　A state prisoner "whose claim was adjudicated on the merits in state court is not

10  entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."

11  Price v. Vincent, 538 U.S. 634, 638 (2003).  Thus, a state prisoner is not entitled to federal

12  habeas corpus relief unless he demonstrates that the state court's adjudication of his claim:

13
14  　　　　(1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

15
16  facts  　　　　(2) resulted in a decision that was based on an unreasonable determination of the in light of the evidence presented in the State court proceedings.

17  28 U.S.C. § 2254(d)(emphasis added).

18  　　　　In determining whether a state court decision is contrary to, or rests on an

19  unreasonable application of, clearly established federal law, the federal court examines the last

20  reasoned decision of a state court.  Nunnemaker, 501 U.S. at 803.  The federal court must first

21  determine whether the United States Supreme Court has "clearly established" the law on the

22  legal issue which Petitioner raises.  Lockyer v. Andrade, 538 U.S. 63, 71 (2003).  Where the

23  Supreme Court has not yet clearly established a rule of law, the writ will not issue.  Mitchell v.

24  Esparaza, 540 U.S. 12 (2004).  Neither the district court nor the Ninth Circuit possess the

25  authority to extend the law beyond Supreme Court precedent.  Arrendondo v. Ortiz, 365 F.3d

26  778, 782 (9th Cir. 2004).

27  　　　　Under the "contrary to" clause of § 2254(d), a federal habeas court may not issue

28  a writ, unless the state court: (1) applied a rule of law "that contradicts the governing law set

1   forth in [Supreme Court] cases," or (2) "confronts a set of facts that are materially

2   indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

3   different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 411 (2000).

4           As used in § 2254(d), the phrase "unreasonable application" is different from an

5   incorrect application of law.  Bell v. Cone, 535 U.S. 685, 694 (2002).  Indeed, an incorrect

6   application of federal law is insufficient to satisfy the standard of review.  Id.  "It is not enough

7   that a federal habeas court, in its independent review of the legal question," is left with the "firm

8   conviction" that the state court ruling was "erroneous."  Id.; Andrade, 538 U.S. at 75.  Rather,

9   the state court decision "must be objectively unreasonable."  Middleton v. McNeil, 541 U.S. 433

10  (2004); Andrade, 538 U.S. at 76.  Likewise, the "unreasonable application" standard is not the

11  same as "clear error."  Andrade, 538 U.S. at 75-76.  "The gloss of clear error fails to give proper

12  deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at

13  75 (citations omitted).

14          The reviewing court must refrain from "mischaracterization of the state court

15  opinion" or record and defer to "the presumption that state courts know and follow the law."

16  Woodford v. Viscotti, 537 U.S. 19, 25-27 (2002).  Even if the state court neither explained its

17  ruling nor cites United States Supreme Court authority, the reviewing federal court must

18  nevertheless examine Supreme Court precedent to determine whether the state court reasonably

19  applied federal law.  Packer, 537 U.S. at 8.  The United States Supreme Court has expressly

20  held that citation to federal law is not required and that compliance with the habeas statute "does

21  not even require awareness of our cases, so long as neither the reasoning nor the result of the

22  state-court decision contradicts them."  Id.  Claims of ineffective assistance of counsel are

23  reviewed to determine whether the state court judgment amounts to an "unreasonable

24  application" of Strickland v. Washington, 466 U.S. 668 (1984) to the facts of the particular case.

25  Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).  The Court will consider Petitioner's

26  claims in view of the foregoing principles.

27

28

1   **II.  Review of Petitioner's Claims**

2   **A.  Controlling Law - <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)**

3   The controlling Supreme Court precedent on claims of ineffective assistance of

4   counsel is <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Hart v. Gomez</u>, 174 F.3d 1067, 1069

5   (9th Cir. 1999).  Under <u>Strickland</u>, a petitioner must show that counsel's performance was

6   objectively deficient and that counsel's deficient performance prejudiced the petitioner.

7   <u>Strickland</u>, 466 U.S. at 687; <u>Hart</u>, 174 F.3d at 1069.  To be deficient, counsel's performance

8   must fall "outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S.

9   at 690. When reviewing counsel's performance, the court engages a strong presumption that

10   counsel rendered adequate assistance and exercised reasonable professional judgment.

11   <u>Strickland</u>, 466 U.S. at 690.  "A fair assessment of attorney performance requires that every

12   effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

13   of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

14   time." <u>Bonin v. Calderon</u>, 59 F.3d 815, 833 (9th Cir. 1995).  Review of counsel's performance

15   is "extremely limited." <u>Coleman v. Calderon</u>, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on*

16   *other grounds*, 525 U.S. 141 (1998).  Acts or omissions that "might be considered sound trial

17   strategy" do not constitute ineffective assistance of counsel. <u>Strickland</u>, 466 U.S. at 689.  Trial

18   counsel's decisions regarding "whether to call specific witnesses - even ones that might offer

19   exculpatory evidence - is ordinarily not viewed as a lapse in professional representation."

20   <u>United States v. Best</u>, 219 F.3d 192, 201 (2nd Cir. 2000).

21   In addition to showing that counsel's performance was deficient, petitioner must

22   establish that he suffered prejudice as a result of counsel's deficient performance. <u>Strickland</u>,

23   466 U.S. at 691-92.  To show prejudice, petitioner must demonstrate a "reasonable probability

24   that, but for counsel's unprofessional errors, the result of the proceeding would have been

25   different.  A reasonable probability is a probability sufficient to undermine confidence in the

26   outcome." <u>Id.</u> at 694; <u>Hart</u>, 174 F.3d at 1069; <u>Ortiz v. Stewart</u>, 149 F.3d 923, 934 (9th Cir.

27   1998).  The court may proceed directly to the prejudice prong. <u>Jackson v. Calderon</u>, 211 F.3d

28

1148, 1155 n. 3 (9th Cir. 2000)(citing Strickland, 466 U.S. at 697).  The court, however, may

not assume prejudice solely from counsel's allegedly deficient performance.  Jackson, 211 F.3d

at 1155.

Petitioner raises six claims of ineffective assistance of counsel in his Amended

Petition for Writ of Habeas Corpus: (1) counsel failed to interview witnesses; (2) counsel failed

to investigate; (3) counsel began negotiating a plea agreement before receiving discovery or

conferring with Petitioner; (4) counsel's actions led to a violation of Petitioner's right to a speedy

trial; (5) counsel did not subpoena witnesses; and (6) counsel misled Petitioner into agreeing

to a "stipulated facts" trial.  (docket # 9 at 5, docket # 7 at 16-34) The Court will consider these

claims below.

**B.  Claims 1, 2 and 5 - Failure to Investigate, Interview, and Call Witnesses**

Petitioner argues that trial counsel was ineffective in failing to investigate and

interview witnesses despite exculpatory reports and witnesses statements that were produced

in discovery.  He further argues that counsel was ineffective in failing to subpoena witnesses

for trial.  The trial court rejected these claims on post-conviction review explaining that:

> The exculpatory statements and discrepancies that Defendant complaints
> about (Dr. d Aquinos[7] [sic] and Dr. Martinez) were submitted to Judge Ryan
> for review.  Defendant has not shown that statements by the fast food
> restaurant employees would have been helpful to him.  Further, defense counsel
> believed that submitting witness statements in the police reports, with their
> discrepancies, was preferable to calling the witnesses and allowing these
> witnesses to explain any discrepancies.   This appears to be a sound legal
> tactic.

(Respondents' Exh. LL at 2) Petitioner has not shown that this finding is contrary to, or an

unreasonable application, of the Strickland standard or based on an unreasonable determination

of the facts.

During the state court evidentiary hearing on the motion for post-conviction relief,

Petitioner testified that defense counsel "talked about interviewing different witnesses and doing

this investigation but admitted that," and that he was only speculating that counsel had not done

---

[7]  The "Aquinos" refers to the victim's Aunt and Uncle whose last name is spelled "Achino"
throughout the rest of the record.

1    any investigation.  (Respondents' Exh. JJ at 14, 35-36)    Petitioner also concedes that defense

2    counsel interviewed the victim, Debra Glasford, and Dr. Martinez.  (Respondents' Exh. JJ at 31,

3    docket # 7 at 16)

4            Defense counsel, Mr. Farrell, testified that a mold infestation in the basement of the

5    Public Defenders' Office destroyed his file on this case and that he lacks any independent

6    recollection of this case. (Respondents' Exh. JJ at 62-63)    However, the record reflects that

7    counsel interviewed at least Dr. Martinez, who examined the victim, and the victim because

8    transcripts of those interviews were admitted into evidence at trial.  (Respondents' Exh. Q;

9    docket # 29) Mr. Farrell also testified that he investigates exculpatory evidence "very strongly,"

10   whether he anticipates the case being resolved by plea or going to trial.  (Respondents' Exh. JJ

11   at 65-66)

12           During the evidentiary hearing on the petition for post-conviction relief, Petitioner

13   admitted that although he wanted Mr. Farrell to interview and call as witnesses the victim, Dr.

14   Martinez, and Mr. and Mrs. Achino, everything favorable to Petitioner was admitted in

15   evidence.  He further testified that "what was in the police reports pretty well said everything."

16   (Respondents' Exh. JJ at 25-27, 29, 31, 40, 44) Petitioner also argues that counsel should have

17   interviewed employees of the McDonald's restaurant where he stopped with the victim.

18   (Respondents' Exh. JJ at 30) Petitioner, however, has not provided any description of the

19   testimony that such witnesses could have given.

20           Mr. Farrell testified that, if he thought that calling other witnesses to testify would

21   have benefitted Petitioner, he would have called such witnesses or otherwise presented their

22   testimony.  When asked whether "there were contradictions to the victim's testimony from other

23   witnesses that were not presented," Mr. Farrell stated, " I have no independent recollection of

24   any conflicting testimony from any witnesses in this case."  (Respondents' Exh. JJ at 81) When

25   asked if he thought it would have been beneficial to call the law enforcement officers who

26   prepared the reports, Mr. Farrell explained that if there was "evidence and testimony of

27   contradictions in the police report, I think it would be better served if there was nobody there

28

1   to refute them obviously.  And that's why I did the submission." (Respondents' Exh. JJ at 83)

2   When Petitioner's counsel on post-conviction relief continued to pursue this issue, Mr. Farrell

3   again responded that, "I would say from a defense standpoint, having a live witness, being able

4   to explain the contradiction is worse for a defendant than not having any testimony and not

5   having any explanation about the contradictions which would be better for my client."  (Id. at

6   83-84)

7             As previously stated, based on the pleadings and the testimony at the evidentiary

8   hearing on the petition for post-conviction relief, the trial court concluded that Petitioner failed

9   to establish that counsel was ineffective with respect to his decisions regarding investigating,

10  interviewing, and subpoenaing witnesses.  The trial court found that counsel's choices were

11  sound legal strategy.  Petitioner has not shown that the state court decision is contrary to, or

12  rests on an unreasonable application of, federal law, or is based on an unreasonable

13  determination of the facts.  The record reflects that counsel reviewed the evidence against

14  Petitioner, including key witness statements, and determined that Petitioner stood a better

15  chance of acquittal in the absence of live testimony that could explain away discrepancies in the

16  record.  Counsel believed that the discrepancies in the written record could create a reasonable

17  doubt regarding Petitioner's guilt.  After review of the record, the Court finds that Petitioner's

18  first claim of ineffective assistance of counsel fails.

19            **C.  Claim 3  - Plea Negotiations**

20            Petitioner also contends that trial counsel was ineffective because he commenced

21  plea negotiations before receiving discovery and before conferring with Petitioner.

22            On post-conviction review, the trial court rejected this claim explaining that

23  counsel's actions were not unreasonable and did not prejudice Petitioner.  (Respondents' Exh.

24  LL at 2) Petitioner has not shown that the trial court's determination is contrary to, or an

25  unreasonable application of, federal law or based on an unreasonable determination of the facts.

26  During the evidentiary hearing on the petition for post-conviction relief, Petitioner complained

27  that before defense counsel even spoke with him or received discovery, he started negotiating

28

1    a plea agreement.  (Respondents' Exh. JJ at 14) Petitioner concedes that he was aware that the

2    State had charged him with five counts based on his activities with the victim.  (Respondents'

3    Exh. JJ at 13)   Petitioner also testified that as a result of defense counsel's efforts, the state

4    agreed to drop counts 2, 3, and 4 in exchange for Petitioner agreeing to submit the case on the

5    record. (Respondents' Exh. JJ at 15) During the evidentiary hearing on post-conviction review,

6    Petitioner admitted that counsel had negotiated a good deal for him by getting the State to drop

7    three of the five charges.  (Respondents' Exh. JJ at 15, 21-22, 51) Thus, even if counsel was

8    deficient in the manner in which plea negotiations were conducted, Petitioner did not suffer any

9    prejudice as a result thereof and this claim of ineffective assistance of counsel fails.

10                   **D. Claim 4 - Violation of Right to a Speedy Trial**

11                   Petitioner further argues that by requesting unnecessary continuances, defense

12   counsel caused a violation of Petitioner's right to a speedy trial.   On post-conviction review,

13   the trial court rejected this claim because Petitioner was tried within five months of the date of

14   his arraignment.   Thus, no speedy trial violation occurred.  (Respondents' Exh. LL at 3)

15   Petitioner has not shown that this decision is based on an unreasonable determination of the

16   facts, or is contrary to, or an unreasonable application of, federal law.

17                   The Sixth Amendment guarantees an accused the right to a speedy trial.  Klopfer v.

18   North Carolina, 386 U.S. 213, 223 (1967); U.S. Const. Amend. VI (providing that "[i]n all

19   criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .").  To

20   determine whether a speedy trial violation has occurred, the court weighs four factors: (1) length

21   of the delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and

22   (4) prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 522 (1972); McNeely v. Blanas,

23   336 F.3d 822, 826 (9th Cir. 2003).  No single factor is either necessary or sufficient to support

24   a conclusion that a violation of the constitutional right to a speedy trial has occurred.  McNeely,

25   336 F.3d at 826.  Rather, the factors must be considered together.  Barker, 407 U.S. at 533.

26   However, absent some delay which is "presumptively prejudicial," the court need not inquire

27   as to the other factors.  Id. at 530.   Depending on the nature of the charges, courts have

28

1   generally found post-accusation delay "presumptively prejudicial" when it approaches one year.

2   Doggett v. United States, 505 U.S. 647, 652 n. 1 (1992); McNeely, 336 F.3d at 826 (finding that

3   three-year delay was presumptively prejudicial).

4           In this case, there was a five-month delay between the arraignment and Petitioner's

5   trial in state court.  (Respondents' Exh. JJ at 3 5-37)  A five-month delay is not presumptively

6   prejudicial.  United States v. Valentine, 783 F.2d 1413 (9th Cir. 1986)(finding no prejudice

7   resulting from six month delay).  Moreover, Petitioner does not allege that the delay in bringing

8   his case to trial was for any improper purpose or that the prosecution sought to lengthen the

9   proceedings.  United States v. Marion, 404 U.S. 307, 325 (1971)(noting that it would be

10  improper for the prosecution to intentionally delay to gain a tactical advantage.)  Because the

11  delay in bringing Petitioner to trial was not excessive, there is no presumption of prejudice.

12  McNeely, 336 F.3d at 831-32.  Additionally, there is no evidence of actual prejudice in this

13  case.  Petitioner does not allege that his defense was hindered in any way by the five months

14  between arraignment and trial.  The delay between arraignment and trial was due to defense

15  counsel requesting continuances to prepare and to negotiate a plea bargain for Petitioner.

16  (Respondents' Exh. JJ at 34-48)  Although Petitioner claims that counsel did not make good use

17  of the continuances which he requested, no speedy trial violation occurred as a result thereof.

18  United States v. Lam, 251 F.3d 852, 857 (9th Cir.), as amended by 262 F.3d 1033 (9th Cir.), cert.

19  denied, 534 U.S. 1013 (2001)(finding that delay caused by continuances requested by defense

20  counsel could not be attributed to the government in assessing alleged speedy trial violation.)

21   Accordingly, Petitioner's claim based on his right to a speedy trial fails because he cannot show

22  that the trial court's resolution of this claim is based on an unreasonable determination of the

23  facts or is contrary to, or based on an unreasonable application of, federal law.

24          **E.  Claim 6 - Submission on the Record**

25          Petitioner further argues that counsel misled him regarding the ramifications of

26  submitting the case on the record including the sentence he would face if found guilty following

27

28

1  the trial.  Petitioner raised this issue on post-conviction review.  The trial court rejected

2  Petitioner's claims explaining that:

3        Prior to Defendant waiving his right to a jury trial, Judge Ryan correctly
       informed Defendant of the possible sentences he was exposed to if he
4        was found guilty; therefore, any supposed incorrect information by defense
       counsel did not prejudice Defendant.  Defense counsel believed that
5        submitting witness statements in the police reports, with their discrepancies,
       was preferable to calling the witnesses and allowing these witnesses to
6        explain any discrepancies.   This appears to have been a sound legal tactic.

7  (Respondents' Exh. LL at 2-3)  Petitioner has not established that the state court's ruling  is

8  based on an unreasonable determination of the facts or is contrary to, or based on an

9  unreasonable application of, federal law.

10        During the evidentiary hearing on the petition for post-conviction relief, Petitioner

11  admitted that he agreed to the submission of the case on the record.  (Respondents' Exh. JJ at

12  9, 11, 47)  He also admitted that defense counsel informed him of the possible sentence which

13  he faced — 70 years — if the trial judge found that the federal kidnapping conviction arising

14  out of the same events constituted a "predicate offense."  (Respondents' Exh. JJ at 2, 24-25, 46-

15  48, 51-52)  Petitioner testified that defense counsel had recommended submitting the case on

16  the record because there were discrepancies in the victim's statements in the police reports, FBI

17  reports, and Dr. Martinez's audio interview tapes.  (Respondents' Exh. JJ at 18-19)  Defense

18  counsel also noted that the statements of the victim's aunt and uncle, Mr. and Mrs. Achino, were

19  somewhat exculpatory and that by submitting the case on the record, the State "wouldn't have

20  the opportunity to contradict the discrepancies," and Petitioner could testify and present

21  evidence in his defense. (Id. at 11-12, 18-19, 21, 29, 31, 34, 38, 53) Petitioner testified that he

22  agreed with counsel's reasons for submitting the case on the record.  (Id.)  He further testified

23  that he thought that the trial court would acquit him based upon the discrepancies in the victim's

24  statements.  (Id. at 54-55)  Petitioner admitted that he had a "few days (25 days)" between the

25  day he waived his right to a jury trial, March 18, 1988, and the day that he formally agreed to

26  the submission of the case on the record, April 12, 1988, to consider the issue and decide

27  whether it was the right decision "[u]nder the circumstances." (Id. at 52-53)

28

1    As previously stated, Mr. Farrell's file on this matter was destroyed and he testified

2    during post-conviction proceedings that he does not have any independent recollection of this

3    matter.  Mr. Farrell testified that after he reviewed the file from the Maricopa County Attorney's

4    Office, his recollection of this case was somewhat refreshed.  (Respondents' Exh. JJ at 64) Mr.

5    Farrell testified that the case was not submitted upon stipulated facts, but was a "submission"

6    wherein the State's case was limited to the evidence contained in the record, and the defense was

7    permitted to point out inconsistencies in the record without "being rebutted by the State."

8    (Respondents' Exh. JJ at 67-68, 70-71) He related that during his 19 years of practicing criminal

9    law, he had submitted "five or six" cases on the record.  (Id. at 84) He explained that he

10   recommended such a submission "only when I thought it would be in the client's best interests."

11   (Id. at 68)

12   Mr. Farrell testified that without his file, he was not certain why he had advised

13   Petitioner to agree to submission of the case on a stipulated record.  However, based on his

14   review of the record, he posited the following reasons: (1) the State agreed to dismiss three of

15   the five charges which lessened the possible sentences; (2) the victim would be unable to

16   explain discrepancies in her prior statements; (3) the police reports were "a little bit more

17   objective than listening to a 14-year-old girl testify as to what she encountered;" and (4)

18   Petitioner would be able to testify and "explain his side of the story and that there would be a

19   lot of evidence from the State to contradict what [Petitioner] was saying outside of what was

20   contained in the police reports."  (Respondents' Exh. JJ at 69-72) Mr. Farrell also stated that,

21   "I thought it might even generate reasonable doubt in anyone's mind, specifically the Judge's

22   mind."  (Id. at 72) Mr. Farrell testified that he would not have told Petitioner he had a chance

23   of being acquitted unless he believed that to be true.  (Id. at 76-77) Additionally, Mr. Farrell

24   insisted that he did not advise Petitioner that the federal kidnapping conviction could not be

25   used as a predicate felony offense to enhance the possible sentence.  (Respondents' Exh. JJ at

26   72, 79-80).

27

28

After review of the record , the Court concludes that Petitioner has not shown that the State court's resolution of this claim rests on an unreasonable determination of the facts or is contrary to, or an unreasonable application of, federal law.  The record reflects that both counsel and the trial court informed Petition of the possible sentence he faced — 70 years — if convicted.  (Respondents' Exh. JJ at 16, 20-21, 24)  The record also reflects that before agreeing to submit the case on the record, Petitioner was aware that he was waiving his right to a jury trial and his right to confront witnesses against him.  (Respondents' Exh. JJ at 18, 20-21, 48, 52)  Petitioner voluntarily waived those rights and agreed to submit the case on the record.   Based on the review of the record, the Court finds that Petitioner's final claim of ineffective assistance of counsel fails.

In view of the foregoing,

**IT IS HEREBY RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254[8] (document # 9) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.  The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within which to file a response to the objections.  Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in th`e acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna- Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact

---

[8] As previously stated, the only claims before the Court are the claims of ineffective assistance raised in the Amended Petition for Writ of Habeas Corpus.  Thus, the recommendation as to those claims disposes of the proceedings before this Court.

in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 7th day of November, 2006.

Lawrence O. Anderson
United States Magistrate Judge